UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEDA I.,

            Plaintiff,             **DECISION AND ORDER**

    v.

                                                    1:20-CV-00434 EAW

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

## **INTRODUCTION**

Represented by counsel, Plaintiff Leda I. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 12), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, the Commissioner's motion (Dkt. 12) is granted and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on January 27, 2016. (Dkt. 6 at 17, 209).[1] In her application, Plaintiff alleged disability beginning January 1, 2009. (*Id.* at 17, 211). Plaintiff's application was initially denied on May 18, 2016, and upon reconsideration on May 12, 2017. (*Id.* at 17, 238-240). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Mary Sparks on November 14, 2018. (*Id.* at 17, 189-208). At the hearing, Plaintiff modified her alleged onset date to the filing date of January 27, 2016. (*Id.* at 17). On March 29, 2019, the ALJ issued an unfavorable decision. (*Id.* at 14-33). Plaintiff requested Appeals Council review; her request was denied on February 12, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 7-10).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since January 27, 2016, the application date. (Dkt. 6 at 19).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of anxiety disorder, depressive disorder, osteoarthritis in the bilateral knees, obesity, and a history of polysubstance abuse. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of Hepatitis C was not severe and that her claimed history of four seizures and a fracture of her left arm in 2009 were not medically determinable impairments as defined in the Act. (*Id*. at 19-20).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 20). The ALJ particularly considered the criteria of Listings 1.02, 12.04, and 12.06 in reaching her conclusion. (*Id.* at 20-21).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except with the additional limitations that she:

> may never climb ladders, ropers or scaffolds, and no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel or crawl and is limited to performing simple repetitive jobs defined as those having no more than 1-2 tasks as defined by the US Dept. of Labor Employment and Training Administration in the Revised Handbook for Analyzing Jobs; and they must be low stress jobs defined as those having no more than occasional decision making required and no more than occasional changes in the work setting and she can have no more than occasional interaction with the public or coworkers.

(*Id*. at 22). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 28).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of silverware wrapper, housekeeper, and label maker. (*Id.* at 28-29). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 29).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred in failing to include in the RFC finding a requirement that Plaintiff use a cane, (2) the Appeals Council failed to properly consider new evidence presented to it, and (3) the ALJ failed to properly account for the symptoms of Plaintiff's mental impairments when assessing her RFC. (Dkt. 10-1 at 2). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A. Failure to Include Requirement for Cane Use

The record in this case shows that on March 31, 2017, Plaintiff asked Dr. Frances Ilozue for a prescription for a "standard cane due to abnormal gait s/p torn meniscus," which Dr. Ilozue subsequently ordered from the Buffalo Pharmacy. (Dkt. 6 at 489-490). Plaintiff argues that the ALJ improperly disregard this prescription by Dr. Ilozue based on her own lay interpretation of the evidence. (Dkt. 10-1 at 15-16). This argument lacks merit.

"[I]n order [for an ALJ] to find that a hand-held assistive device, such as a cane, is medically required, the record must contain medical documentation establishing the need

for the device to aid in walking or standing." *Rowe v. Berryhill*, No. 1:17-CV-00208-MAT, 2018 WL 4233702, at *4 (W.D.N.Y. Sept. 6, 2018) (citing Social Security Ruling ("SSR") 96-9P, 1996 WL 374185 at *7)). In addition, "the documentation must describe the circumstances for which it is needed (*i.e.*, all the time, periodically, or only in certain situations; distance and terrain; and other relevant information)." *Id*.

Here, the record before the ALJ did not contain medical evidence establishing the need for use of a cane. As the ALJ noted in her decision, on March 31, 2017—the same day that Dr. Ilozue prescribed a cane at Plaintiff's request—Dr. Ilozue also noted that Plaintiff walked with a normal gait and had no obvious instability, intact motor strength, and a full range of motion in her lower extremities. (Dkt. 6 at 24, 490). The same was true on March 3, 2017, the only other occasion on which Dr. Ilozue saw Plaintiff. (*Id*. at 24, 495). As the ALJ further noted, Plaintiff did not require an assistive device when examined by consultative examiner Dr. Hongbiao Liu on March 7, 2017, and notes from her treatment providers reflect normal gait on visits on December 15, 2017, July 18, 2018, and September 19, 2018, with no indication that an assistive device was necessary. (*Id*. at 24-25, 480, 592, 608, 718). On these facts, the Court finds no error in the ALJ's failure to incorporate use of a cane into the RFC finding. *See Gonzalez v. Comm'r of Soc. Sec.*, No. 19-CV-06230, 2020 WL 4548031, at *5 (W.D.N.Y. Aug. 6, 2020) (ALJ did not err in failing to find that the plaintiff needed a cane where "at the appointment when [plaintiff's physician] prescribed plaintiff a cane, she observed that he walked normally without an assistive device" and "[d]espite the prescription of a cane, she and other medical providers observed that he walked normally without the cane").

The cases cited by Plaintiff (*see* Dkt. 10-1 at 20) are inapposite and do not support a finding of error in this case. In *Ramos v. Comm'r of Soc. Sec.*, No. 17-CV-4632 (WFK), 2019 WL 4602826 (E.D.N.Y. Sept. 23, 2019), "each examining source noted that the Plaintiff was required to use an assistance device and to wear knee braces." *Id*. at *4. Similarly, in *Wright v. Colvin*, No. 6:13-CV-06585 MAT, 2015 WL 4600287 (W.D.N.Y. July 29, 2015), the plaintiff's "use of a cane and . . . gait abnormality" were well-documented in the medical record. *Id*. at *5. *Gregory F. v. Comm'r of Soc. Sec.*, No. 19-CV-00481-LJV, 2020 WL 7166738 (W.D.N.Y. Dec. 7, 2020) is another case where numerous medical records "did more than simply observe that [the plaintiff] used a cane: they confirmed that he needed one." *Id*. at *4. No comparable facts are present here.

### B. Appeals Council Consideration of Additional Evidence

Plaintiff submitted the following additional evidence to the Appeals Council: (1) records from Buffalo General Hospital dated from April 5, 2017, to March 28, 2019; (2) records from the Erie County Medical Center ("ECMC") Neurology Department dated from March 28, 2019; (3) records from ECMC dated from January, 2017, to April 1, 2019; and (4) records from Evergreen Health Services, Inc. dated from March 17, 2017, to April 22, 2019. (Dkt. 6 at 6). In denying Plaintiff's request for review, the Appeals Council found that there was not a "reasonable probability that [this evidence] would change the outcome of the decision." (*Id*.).

"[T]he Appeals Council, in reviewing a decision based on an application for benefits, will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council

finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (citing 20 C.F.R. § 416.1470); *see also Graham v. Berryhill*, 397 F. Supp. 3d 541, 557 n.10 (S.D.N.Y. 2019) (when faced with an argument that the Appeals Council failed to appropriately consider the new evidence submitted to it, "the court is expected to determine if the new evidence results in the ALJ's decision not being supported by substantial evidence or otherwise runs afoul of [42 U.S.C.] section 405(g)").

Here, many of the records Plaintiff submitted to the Appeals Council were duplicative of records already provided to the ALJ. In the non-duplicative records, there was a new opinion from treating nurse practitioner ("NP") Cathleen Niedermayer dated August 20, 2018. (Dkt. 6 at 139-140). NP Niedermayer, who had been treating Plaintiff since 2017, opined that she had "no evidence of limitations" in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, seeing, hearing, speaking, or using her hands, and was only "moderately limited" in "stairs or other climbing." (*Id*. at 140). NP Niedermayer also opined that Plaintiff had no limitations in her mental functioning. (*Id*.). This opinion, which is less restrictive than the ALJ's RFC finding, plainly does not render the ALJ's determination that Plaintiff was capable of performing a limited range of light work against the weight of the evidence.

Nor, contrary to Plaintiff's argument, do records from late 2018 and early 2019 reflecting use of a cane call into question the validity of the ALJ's determination. Review of the additional evidence submitted to the Appeals Council reveals that Plaintiff sprained her right knee in September 2018 while breaking up a fight between her dog and another

dog. (Dkt. 6 at 150-54). Plaintiff's ability to walk was impacted as a result of this accident, necessitating temporary use of a cane. (*See id*. at 135). However, on December 27, 2018, Plaintiff's gait was normal and she had a normal range of motion in her extremities. (*Id*. at 147). By April 1, 2019, Plaintiff's physicians indicated that she required only "conservative measures" to treat her knee pain, not including the use of a cane. (Dkt. 6 at 180)[2]. Plaintiff's temporary use of a cane due to an accident does not render the ALJ's finding that Plaintiff was capable of a limited range of light work contrary to the weight of the evidence.

Plaintiff also submitted to the Appeals Council NP Niedermayer's treatment notes from April 22, 2019, indicating that Plaintiff had a "markedly antalgic gait" and was using a cane after suffering a fall the previous day when her dog pulled her down. (*See id*. at 128). This evidence of a worsening in Plaintiff's condition outside the relevant time period and after a fall does not render the ALJ's determination against the weight of the evidence. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 40 (2d Cir. 2020) (physician's examination performed outside the relevant time period and after "a recent fall . . . did not bear on [the plaintiff's] limitations for the disability period.").

In sum, "[t]he evidence submitted by [Plaintiff] to the Appeals Council does not contradict the ALJ's finding . . . and therefore the ALJ's determination is supported by

---

[2] Plaintiff's physicians' note from this date also states "Work Status: Totally Disabled." (Dkt. 6 at 180). Plaintiff seems to suggest that this is an opinion of a treating physician that should have been credited by the Appeals Council. (*See* Dkt. 15 at 8). However, a review of the treatment records indicates that it was Plaintiff herself who reported to her physicians on April 1, 2019, that she was "currently on disability for knee, shoulder, PTSD." (*Id*. at 179). In any event, the ultimate issue of disability is reserved for the Commissioner.

substantial evidence." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The Court finds no basis for remand or reversal in the Appeals Council's assessment of the additional evidence submitted by Plaintiff.

### C. Assessment of Symptoms from Mental Impairments

Plaintiff's final argument is that the ALJ gave insufficient credence to her testimony that her mental impairments caused episodic symptoms. (*See* Dkt. 10-1 at 28-30). However, the Court finds no error in the ALJ's assessment of Plaintiff's subjective complaints.

The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the regulations applicable to Plaintiff's claims require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" her symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1) ). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are

not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.* The ALJ applied the two-step inquiry in this case and determined that Plaintiff's subjective complaints were not fully credible. (Dkt. 6 at 23).

With respect to Plaintiff's mental impairments, the ALJ explained that Plaintiff's sporadic treatment history, her self-reported ability to—among other things—manage her own money, her failure to provide her mental health providers with accurate information regarding her history of substance abuse, and the psychiatric examinations of record all rendered her subjective complaints less than fully credible. (*Id*. at 26-27). Plaintiff makes no meaningful critique of the ALJ's credibility assessment, and the Court finds no error therein.

Plaintiff does make a cursory argument that the ALJ's conclusion that she was not limited in interactions with supervisors but was limited in her interactions with coworkers and the public is not supported by substantial evidence. (Dkt. 10-1 at 29-30). However, while Plaintiff testified that she had difficulty being in public and around groups of people (*see* Dkt. 6 at 21, 199), she points to no evidence suggesting that she had similar difficulty in one-on-one situations. To the contrary, as the ALJ noted, Plaintiff reported being able to attend bible study and socialize with her family and friends. (*Id*. at 21, 27). The Court finds no error in the ALJ having accounted for Plaintiff's aversion to groups of people by limiting her interactions with coworkers and the public, but not with supervisors.

In sum, the Court concludes that the ALJ's assessment of Plaintiff's subjective complaints was reasonable and consistent with the evidence of record. Accordingly, there is no basis for remand or reversal.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 24, 2021
      Rochester, New York